**TO: Clerk's Office**
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



APPLICATION FOR LEAVE
TO FILE DOCUMENT UNDER SEAL

********************************
IN THE MATTER OF THE SEARCH OF:
THE PREMISES KNOWN AND DESCRIBED
AS 333 MOSELEY STREET, STATEN
ISLAND, NEW YORK 10312, AND ANY
CLOSED CONTAINERS/ITEMS

20-M **709**
_____
Docket Number

********************************

SUBMITTED BY: Plaintiff_____ Defendant_____ DOJ ✔
Name: Matthew R. Galeotti
Firm Name: USAO-EDNY
Address: 271 Cadman Plaza East
Brooklyn, NY 11201
Phone Number: 718-254-6340
E-Mail Address: matthew.galeotti@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES_____ NO ✔
**If yes, state description of document to be entered on docket sheet:**

_____
_____
_____

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

**B) If a _new_ application,** the statute, regulation, or other legal basis that authorizes filing under seal

Ongoing criminal investigation._____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY _NOT_ BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED: Brooklyn_____, NEW YORK

_Lois Bloom_ 8/20/20

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE_____
DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation:_____; or **C.)** ✔ This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

August 20, 2020        _Matthew R. Galeotti_
DATE                         SIGNATURE

AB:MRG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: THE PREMISES KNOWN AND DESCRIBED AS 333 MOSELEY STREET, STATEN ISLAND, NEW YORK 10312, AND ANY CLOSED CONTAINERS/ITEMS CONTAINED THEREIN | **APPLICATION FOR A SEARCH WARRANT FOR A PREMISES AND ELECTRONIC DEVICES FOUND THEREIN**<br><br>No. 20-M  709 |

<u>**AFFIDAVIT IN SUPPORT OF AN**</u>
<u>**APPLICATION UNDER RULE 41 FOR A**</u>
<u>**WARRANT TO SEARCH AND SEIZE**</u>

I, RENATO LULAJ, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 333 Moseley Street, Staten Island, New York 10312, hereinafter the "PREMISES," further described in Attachment A, for the things described in Attachment B.

2.      I am a Special Agent with the Drug Enforcement Administration ("DEA").   I am currently assigned to the DEA New York Drug Enforcement Task Force where I have served for over three years.  During my career in the DEA during that same time period, I have participated in investigations of drug trafficking crimes and, among other things, have conducted and participated in surveillance, the execution of search warrants, debriefings of informants, reviews of taped conversations and drug records, and have participated in

investigations that included the interception of wire and electronic communications and the use of location information for multiple cell phones.  Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored and distributed, the methods of payment for such drugs, the laundering of narcotics proceeds and the "lingo" and coded language used by narcotics traffickers, gang members and individuals involved in drug- and gang-related crime, including violent crime.

3.     This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals.  Because this Affidavit is being submitted for the limited purpose of obtaining the requested warrant, it does not include all of the facts that I have learned during the course of this investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.  Where dates are reported, they are reported on or about the specific date.  Where times are reported, they are reported in approximations.  In making this application, I am relying only on the facts stated herein.

4.     For the reasons set forth below, I respectfully submit that probable cause exists to believe that inside the PREMISES exists evidence, contraband, fruits, and instrumentalities of federal criminal offenses including violations of Title 21, United States Code, Sections 841 (distribution of, and possession with intent to distribute, narcotics), and 846 (conspiracy to distribute narcotics) (collectively, the "Specified Federal Offenses").

2

**THE PREMISES**

5.        333 Moseley Street, Staten Island, New York 10312 (the "PREMISES"),
is a two-story private house with a basement.  The PREMISES has a white front door with the
numbers "333" in gold print on the door.  The first floor has a light colored brick façade, and the
second floor has light yellow paneling.

**PROBABLE CAUSE**

6.        The DEA is currently investigating FRANK SCALTRITO for narcotics
distribution in the Eastern District of New York and elsewhere.  SCALTRITO resides at the
premises.

7.        On August 18, 2020, Delaware State Troopers conducted a traffic stop of
an individual driving northbound on I-95 (the confidential source, "CS"), who was driving a
2019 Chevrolet Impala, with temporary California registration #Ba59w10.  The Troopers found
forty-one pounds of marijuana in the CS's car.  The CS was placed under arrest, read his
Miranda rights, and agreed to cooperate with the DEA's investigation.  Specifically, the CS told
law enforcement that he was en route to the PREMISES to deliver the marijuana to
SCALTRITO.  The CS further told law enforcement that he (the CS) had delivered marijuana to
the PREMISES on prior occasions.  The CS stated that SCALTRITO frequently purchases
marijuana from an Israeli drug trafficking organization ("DTO") which operates in northern New
Jersey, but because that DTO's price are high, SCALTRITO made the instant purchase from

3

Chino, California.  On this occasion, the CS was delivering the previously-described forty-one

pounds of marijuana to the PREMISES.  SCALTRITO stated that he believed he had observed

cocaine on the PREMISES previously.

        8.      Law enforcement showed the CS a photograph of SCALTRITO.  The CS

identified SCALTRITO.  The CS further identified and described the PREMISES as the location

where has delivered marijuana.

        9.      On August 20, with the CS's consent, the DEA recorded a call between

CS and SCALTRITO.  SCALTRITO stated that a mutual friend informed him that the CS was

arrested by the DEA and SCALTRITO sounded worried.  The CS and SCALTRITO discussed

that the mutual friend is crazy, colloquially speaking, and the CS stated that he had not been

arrested and the mutual friend's information was unreliable.

        10.      Further, during the phone call, SCALTRITO stated, in sum and substance

and in part, that because he was worried about the CS being arrested, he (SCALTRITO) had

been planning on cleaning his house, i.e., removing contraband and product.  SCALTRIRTO

stated this in the past tense.  During the phone call, SCALTRITO confirmed and agreed to

conduct the deal (i.e., marijuana in exchange for cash) with the CS at the PREMISES.

SCALTRITO further stated that he was going to make an additional phone call to a third party

regarding the shipment.

11.     Shortly after the original call, SCALTRITO called the CS and stated that, rather than the PREMISES, SCALTIROTO preferred to meet and do the deal in downtown Brooklyn at no particular address.

12.     At approximately 1:09 p.m., law enforcement observed SCLATRITO exiting the PREMISES with a black leather bag.  Shortly after that, law enforcement conduced a traffic stop. During the traffic stop, law enforcement smelled a marijuana odor from SCALTRITO's vehicle. During a vehicle search, law enforcement found multiple pound bags of marijuana.  Law enforcement also found liquid Tetrahydrocannabinol ("THC"), and edible THC candy were found in the SCALTRITO's vehicle.  Law enforcement officers arrested SCALTRITO.

13.     Shortly after that, law enforcement observed an additional vehicle stop at the PREMISES.  A male subject got out of his car, went inside the PREMISES, and picked up packages from inside the PREMISES and carried them out to his vehicle.  As that individual pulled away, a traffic stop was conducted by law enforcement, and they discovered several pounds of marijuana inside the car.  The individuals in that car were SCALTRITO's sister and brother-in-law.  In response to a law enforcement question, SCALTRITO's brother-in-law stated, in sum and substance, "he told us to clean the place out."

14.     Following that statement, law enforcement conducted a security sweep of the PREMISES.  During the sweep, law enforcement observed a balance scale in the basement of the PREMISES, which is typically used to weigh narcotics.  The basement of the PREMISES smelled of marijuana.  In addition, law enforcement walked past a large hockey bag in the back

5

yard, adjacent to two additional large boxes, all of which smelled of marijuana.  Based on my

training and experience, large hockey style bags are often used to transport narcotics.

        15.    Following his arrest, SCALTRITO stated that he would give law

enforcement consent to search the PREMISES but recanted after law enforcement told him that

the whole of the PREMISES would be subject to search.

        16.    The New York State Attorney General's Office told DEA agents involved

in this investigation that it had in its possession recorded conversations of SCALTRITO

communicating with a carting company run by the Bonnano crime family of La Cosa Nostra.

        17.    Based on the information provided by CS, corroborated by law

enforcement, I believe that SCALTRITO stores narcotics and narcotics related proceeds at the

PREMISES.

## DRUG TRAFFICKERS COMMONLY KEEP CERTAIN ITEMS

        18.    Based on the information set forth in this Affidavit, I submit that there is

probable cause to believe that SCALTRITO has committed, is committing, and will continue to

commit violations of the Specified Federal Offenses, and that evidence of those offenses is likely

to be recovered from the PREMISES.

        19.    Based on my training, experience, and participation in this and many other

narcotics trafficking investigations, as well as my conversations with other agents and officers

involved in this and other such investigations, I believe the following:

20.     Drug traffickers commonly use residences to receive and store narcotics. Such residences often serve as a base of operation for a narcotics trafficking organization.  In this case, for example, the investigation has revealed probable cause to believe that SCALTRITO has used and continues to use the PREMISES to store narcotics and narcotic trafficking proceeds.

21.     Although quantities of narcotics sometimes move very quickly from one location to another as they are sold, records, documents, and electronic devices frequently are maintained in these locations on a continuing basis and for longer periods.

22.     Such apartments frequently contain materials and records used in connection with the business of distributing and selling drugs, including accounting records, ledger books and sheets, notations, account balances, United States currency and closed containers securing such currency, money orders, cashier checks, records of the electronic transfer of funds, personal address books and telephone directories, Rolodex indices, photographs of associates and subjects, adding machines and adding machine tapes and calculators.

23.     Drug traffickers frequently maintain large amounts of United States currency on hand in order to maintain and finance their ongoing business.

24.     Drug traffickers commonly keep paraphernalia for packaging and distributing controlled substances.

25.     Drug traffickers routinely keep closed containers inside of which they keep narcotics, narcotics paraphernalia, books, records, and other documents containing the

names, addresses, and/or telephone numbers of narcotics trafficking associates, and currency and/or other valuables used to purchase narcotics or which reflect the proceeds of narcotics sales. Such containers include safes, key-lock strong boxes, suitcases, hidden compartments, and other instruments, which are further secured by combination and/or key locks of various kinds.

26.     Based on my training, experience, participation in other investigations concerning narcotics trafficking, I know that individuals who traffic narcotics routinely secrete and store books, records, documents, currency, and other items of the sort described in Attachment B to this Affidavit.

## CONCLUSION

27.     I therefore that this Affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B.

## REQUEST FOR SEALING

28.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that online criminals actively search for

criminal affidavits and search warrants via the Internet, and disseminate them to other online

criminals as they deem appropriate, i.e., post them publicly online through the carding forums.

Premature disclosure of the contents of this affidavit and related documents may have a

significant and negative impact on the continuing investigation and may severely jeopardize its

effectiveness.

Respectfully submitted,

RENATO LULAJ
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me via telephone on
August  20 , 2020

HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

9

## ATTACHMENT A

*Property to be searched*

The property to be searched is 333 Moseley Street, Staten Island, New York 10312 (the "PREMISES").  The PREMISES is a two-story private house with a basement.  The PREMISES has a white front door with the numbers "333" in gold print on the door.  The first floor has a light colored brick façade, and the second floor has light yellow paneling.  The property to be searched includes any locked or closed closets, crawl spaces, safes, file cabinets, and stationary or moveable containers therein.

## ATTACHMENT B

*Property to be seized*

1.      Any items, contraband, fruits and instrumentalities related to distributing, dispensing, or possessing with the intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841 (distribution of, and possession with intent to distribute, narcotics), and 846 (conspiracy to distribute narcotics) (collectively, the "Specified Federal Offenses"), those violations involving FRANK SCALTRITO and relating to the occupancy and/or ownership of the PREMISES including the following:

   a.   narcotics and controlled substances;

   b.   paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, "stamp bags", microwave ovens and heat-sealing devices;

   c.   books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances, relating to the shipment and receipt of controlled substances, and relating to monetary transactions involving the proceeds from the sale of controlled substances;

   d.   cash, currency, and records relating to the generation of income from the sale of controlled substances and the expenditure of such income, including money orders, wire transfers, cashier's checks and receipts, bank statements, checkbooks, and check registers, as well as consumer items such as electronic equipment, which may be evidence of drug trafficking as opposed to drug use;

   e.   identification evidence and/or indicia, such as cell phones with particular numbers, mail, deeds, leases, rental agreements, photographs, bills, and identification documents, that tend to identify the person(s) in residence, occupancy, control, or ownership of the PREMISES.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>IN THE MATTER OF THE SEARCH OF: THE PREMISES<br>KNOWN AND DESCRIBED AS 333 MOSELEY STREET,<br>STATEN ISLAND, NEW YORK 10312, AND ANY CLOSED<br>CONTAINERS/ITEMS CONTAINED THEREIN | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    20-M-   709 |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 2, 2020_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____the Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      8/20/20 at 7:30 p.m.                    *Lois Bloom*
                                                                                                  *Judge's signature*

City and state:      Brooklyn, New York                    Hon. Lois Bloom          U.S.M.J.
                                                                                      *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>    20-700 M | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

---

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*